anity. May it please the court. My name is Carolyn Kubitschek and I represent the appellant Albert Stacey. In evaluating the opinion of Albert Stacey's treating psychologist, the Social Security Administration ignored its own regulations for weighing the opinion of a treating physician and the law of this circuit. Now the law of this circuit has been established conclusively back in the Burgess decision 11 years ago, reestablished or reaffirmed in the Estrella decision some months ago, and yet the commission, and it's in the commissioner's own regulations that if the opinion of a treating physician is not given conclusive weight, then there are four factors which the Social Security Administration, including the ALJ, must weigh. And must do so explicitly. In this particular case, the administrative law judge only mentioned one factor, and that was the factor that weighed in favor of the treating physician, that is, longevity of treatment. And despite writing a decision which ran to 20 pages of single-spaced type, ignored the other three factors of the Social Security. This court, sorry, has said repeatedly that if the ‑‑ These are the Burgess? Specifically, frequency, length and nature and extent of treatment, which the ALJ did consider and said, well, that weighs in favor of the treating psychologist who has treated Mr. Stacey for years and for more than 100 visits and has written about those. The amount of medical evidence supporting the opinion didn't mention it at all. The consistency of the opinion with the medical evidence didn't mention that at all. And whether the treater is a specialist didn't mention that at all. So we actually said, and I take it that you're alluding to the word explicit or explicitly, but have we actually said that an ALJ needs to go through and mention each one of the factors? Yes. In both the Burgess decision 11 years ago and then in Estrella earlier this year, the ALJ must mention those factors because the reviewing court should not have to comb through a decision that's this long and guess whether the ALJ actually did consider the factors. When assigning weight at step two. I'm sorry? You're saying when assigning weight at step two. That's correct. If the ALJ does not give conclusive weight to the opinion of the treating physician, which, of course, we suggest that the ALJ should have done in this case. And Estrella does use the words explicitly apply. Explicitly apply because the reviewing court should not have to guess whether or not the ALJ applied the factors but forgot to mention it in his decision or whether the ALJ simply forgot to apply the factors. What reasons did the ALJ give for discounting the treating physician? Primarily that the treating physician had not, well, two reasons first, that the treating physician had not conducted a mental status examination. Is there any requirement that such a thing be done? None whatsoever, as the treating psychologist herself wrote in responding to the administrative law judge's decision. This is not a common occurrence in providing psychological treatment to a patient. And, in fact, the other two doctors who did not examine Mr. Stacey also did not conduct mental status examinations. And so, therefore, that particular factor does not weigh in favor of the treating psychologist, although it was an explicit reason that the ALJ gave for discounting the treating psychologist's opinion. And secondly, the ALJ discounted the treating psychologist determination that Mr. Stacey's problems with concentration would render him off-task more than 15 percent of the workday. The ALJ says, well, that couldn't be because he watches television and he plays video games. But we've already said that's ridiculous. Yes, that's ridiculous. Thank you. We've said that in various opinions. That would be enough to reverse and remand this matter for a hearing with instructions to the ALJ saying the ability, ability, the fact that he watches television does not in and of itself make him employable in any form. The ALJ did mention relationship with family as being an indication that he could have relationship with others outside. What do you say to that? I say that Mr. Stacey does not have relationships with family members. His marriage was in terrible shape. His wife left him and filed for divorce. I say that even if that is relevant, that is, the record does not support the ALJ on that. Correct. Correct, Judge Calabresi. The record refutes the ALJ on that. The one time that Mr. Stacey, I'm sorry. Was the primary problem, though, not so much relations as his inability to concentrate for an extended period of time? That is the primary problem because everybody agrees that Mr. Stacey has problems with concentration. Is that a problem that reflects the ADHD diagnosis, or is that a problem that reflects something else? Well, Your Honor, people who suffer from depression, difficulty in concentration is a known sign of depression. It goes along with depression. I guess what I'm asking is in this record, did Dr. Tobias or anybody else attribute the lack of concentration to a specific diagnosis? I believe that they did not state whether or not the lack of concentration was caused by ADHD or the lack of concentration was caused by depression. And perhaps they don't know. He was prescribed Adderall. He was prescribed Adderall, yes. How do we assess the Adderall prescription? I mean, if the inability to concentrate rests on the ADHD diagnosis and that can be treated by Adderall, how do we assess that? Well, the way we assess it is that this is really a medical decision that the, even the non-examining psychologists said, yes, Mr. Stacey has difficulty concentrating. They referred to it as moderate. They said that there are episodic exacerbations of his difficulty with concentrating. But everybody agrees that he has difficulty concentrating, despite the prescription of Adderall. If I were a pharmacologist, I might be able to say that Adderall doesn't work for everybody. That's not in this record. But the fact is he is ---- Your real point, I take it, is that the narrow procedural error of the Burgess, of not explicitly going through each Burgess factor is enough for remand. Correct, Your Honor. Okay. Are you asking us to send the thing back or are you asking us to order in favor of your plan? Well, Your Honor, the remedy is we understand discretionary under Section 405G of the Social Security Act. We would ask that the court exercise its discretion to reverse and award benefits because the commissioner did not sustain his burden, which was his burden at Step 5 of the sequential evaluation. But we also understand that this is a discretionary issue and the court has discretion either to award benefits or remand for further administrative proceedings. Thank you. Thank you. Thank you, Your Honors. First, I just want to address and take issue with the idea that ---- Please speak right into the mic. Oh, I'm sorry. Sorry about that. With regards to the idea that the ALJ did not actually address the Burgess factors, the issue of Ms. Tobias basing her opinion on Stacy's reports as opposed to mental status examinations is addressing the support factor. What mention did she make? What mention did the ALJ make of substantial medical evidence supporting Tobias's opinion? The ALJ said that Ms. Tobias's opinion was based largely on Stacy's self-reports, which is essentially the opposite of saying that it is well-supported by medically acceptable clinical and laboratory diagnostic people. In mental cases, we have said repeatedly that self-report is the starting point. Mental cases ---- It's the starting point, but it's not everything. And, actually, if I point you to the listings, Section 12, which is where all the mental health listings are, and it discusses the kind of evidence that we want in mental health cases, it specifically talks not only about symptoms but also about signs, observable things. And even as Ms. Tobias recognized, mental health clinicians do perform what's called mental status examinations. And, in fact ---- My problem in this case is that there is nothing medical on the other side. You have two people who haven't even seen this person, who have not done any tests, who have done nothing but to be simply hired by Social Security. Okay. Two things in response to that. First ---- Can you slow down a little bit? Oh, sorry. First, the doctors that she saw, actually, Ms. Tobias's colleagues who saw her, Drs. Patel and O'Neill, they did perform mental status examinations, and their findings were essentially normal. Two, this Court has said that we can credit state agency doctor opinions over treating physicians' opinions. We've said that over and over again. And in particular ---- We can. Of course we can. But we have said, in Estrella, I believe, that where they have seen him only once, that is dubious. And here they haven't seen him at all. This is true. But, as I said, there's a history in this circuit, and I'll get to it. Actually, there's three lines of case law I think that you might find helpful here. There's, of course, the broader line of case law indicating that you can ---- ALJ is free to credit the state agency doctor. But there are three specific scenarios that apply here that this Court has said it was okay to credit the state agency never having seen the person over the treating physician. First, whereas here the treating physician submitted just a checkbox form without narrative explanations. Second, whereas here the treating physician spoke to an area that she didn't treat the person for. So for the off-task and the absentee limitations, she's talking not only about his mental, but his physical condition for which she didn't treat her. And so ---- When you say checkbox forms, I mean, there's a ---- It means the lawyer created it, and there's not actually, in addition to answering the question, they didn't provide any support to explain the limitation. What I have in the record is weekly or monthly at least records of Dr. Tobias or Ms. Tobias. Those are her records, but we're talking about the off-task and absenteeism limitations in the opinion form, the report that was submitted for the purposes of him obtaining disability benefits. I'd like to go through a few things with you. Sure. The ALJ concluded that Tobias' opinion was inconsistent with substantial evidence in the case record, as we know. But I'm not sure that those inconsistencies withstand examination. And if you could bear with me and help me explain where I'm missing something. The ALJ said that Tobias characterized Stacey as having extreme difficulties, I'm quoting, interacting appropriately with coworkers and members of the public. The ALJ says, no, this is contradicted by the fact that Stacey maintains a relationship with his wife, communicates with other members by telephone. But as your adversary says, the record seems to suggest that Stacey has very limited relations with family members. If anything, they are very tense. And the problems of the marriage was a frequent part of the therapy sessions. The evidence establishes, if you look at AR 473 and 57 and 58, that Stacey doesn't get along with his father, with his brother, with other family members, with whom he had only infrequent contact. How do you respond to that? Then I have some others I'd like to. Sure. And there is evidence indicating that way. There's also evidence indicating the other way. One relative, one cousin or something. So, yeah, it says he gets along with his cousins and his aunts. There's a few notes in the record, actually, in the context of him going to see his doctors where he talks about he reunited with, you know, a friend or, I'm sorry, a family member of an ex-girlfriend who he's helping out and that made him feel good. There are some people he gets along with, according to this record. He was able to get along with some people. He had, during this time before he reconciled with his wife, he had a girlfriend, never reported any problems with this girlfriend at all. What does that say about capacity to work? If somebody gets along with some people and doesn't get along with others, you know, at work, you better get along with a fair number of people. I mean, I get along with some of my fellow judges. There are some federal judges who might disagree with that. And to that, what I would say is that, yes, he clearly had specific people with whom he had a problem, his wife and his father. Obviously, most of us, I think, know of relationships like that are a little bit troubled. Let me tell you what ultimately bothers me about this case. I have, reading this record, it looks to me as if the ALJ saw this person and decided, and I'm kind of sympathetic to that, that on seeing this person, this person was okay. But that's the kind of, and, you know, I can understand that, but that's the kind of medical evidence we have. His providers on seeing him and conducting mental status examinations similarly noted that he was okay. But we've said the ALJ is not the one who can do that. But his providers did, and they can. And that's true. The mental status findings from his two mental health providers and the mental status examinations from all his physical health providers, who also do sort of a shorter mental status examination as part of visits, are normal. Where did the two hours of concentration come from? That is a function of the fact that work days typically have lunch break, unskilled work typically has a lunch break in 2-15, so that would be what would be required to get you to the first 15 and then to the lunch. So what is it about the two hours? What have they identified? Why is it two hours of concentration? Where have they shown that two hours of concentration is what he can do? The state agency doctors, based on their expertise as doctors, and based on a review of the record, sort of that's sort of the sort of he can at least do that, and that would be what would be necessary to do work. So it's sort of saying, yes, he would meet that requirement, which is what is required in unskilled work. You're just saying they say it's two hours based on their expertise. But what is it in his history that suggests that he can concentrate for two hours at a time? The fact that there are no mental status findings showing a lack of concentration, and it is his burden to prove... From Patel and O'Neill. From Patel, from O'Neill, from every time he's gone to the doctor and they've done mental status examinations, no concentration deficits are noted anywhere in the record. And as my colleague Peter pointed out at the beginning of his argument, under Biestik v. Berryhill, this is a — the substantial evidence is not a high standard. They have the burden of review of proof. What about watching, as Judge Calabresi aptly described, it's a ridiculous argument that watching video games and TV can... So two things in that regard. First, in Popor, this Court actually did say that considering activities including driving and watching television included, we're okay in the context of a more general analysis. And here we have not only those items, but also the lack of mental status examinations. So it is a factor that's appropriate. May I ask you one thing? Suppose we disagreed with you. What would we send it back for? I mean, I assume that if we disagreed with you, you'd want us to send it back and not order. And that's what we normally do. I'm just curious what we would send it back for. What is it? And in the last case, I can understand what we'd send it back for. But what is it that we'd send it back for in this case? Well, there's a few things. If you're sending it back because you found insufficient articulation of the — of the Burgess factors... Yes. If that were — if that's the basis, then that's obvious. We send it back for articulation. The record included sufficient evidence on which the ALJ could have concluded that Ms. Tobias' opinion was entitled to less than controlling weight. And I — And is it your position that Estrella allows for that? I mean, it does have the word explicitly. The court can look at the fact that no mental status examination finding support this. This Court can look — this Court can look at the fact that no mental status examination findings support this. They can look at... You know, in that more recent case, a — a signed presidential opinion or a summary order. Gara is a summary order. Halloran, of course, is published, but also talks about... But consistent with the Court's reasoning in Gara, Estrella should not be interpreted as the kind of hammer that Stacey is suggesting here. You can look at the record. You can see that the record does not show — even though he has had mental — it would be one thing if there was no mental status examinations in the record, but he had them, and they came back normal. That's very, very significant.  I do have a concern that I want to raise with you, and that is on the drug abuse question. As I understand it, you're saying that if we were to — to rule against you, that you would want us to remand so that the agency can consider whether Mr. Stacey's impairments were either caused by or exacerbated by drug abuse. My concern is this. The ALJ, at least as I understand it, and point me otherwise, made no such finding. No medical provider, at least as far as I can tell, has attributed Mr. Stacey's symptoms to that drug abuse. And the Social Security Administration had earlier said — concluded that there was no evidence of drug abuse. So why should we grant a remand on this new theory, what appears to be a new theory? Help me understand. It's abuse. So there is evidence there that would warrant considering that. In terms of, like, the agency's initial look, that was done at the state agency level by a disability examiner. That was not a final decision of the commissioner of Social Security, and the ALJ did not make a finding on DNA because they did not need to in order to close this case. Thank you. A couple of corrections to what counsel said. Counsel focused heavily on an interpretation of reports by two doctors, Drs. Patel and O'Neill. These reports are not mentioned anywhere in the administrative law judge's opinion. The ALJ did not mention them whatsoever, and under the Chenery Doctrine, this Court cannot substitute that type of analysis for what the ALJ did. So what we have here, the evidence that the ALJ was considering was from the treating psychologist who did not merely write check-off boxes on the form, but she wrote a three-page narrative report, which can be found at pages 83 to 85 of the record, and the opinions of two non-examining physicians. All of those doctors found that Mr. Stacey suffers from a mental impairment which interferes with his ability to concentrate. So the issue is not whether or not he has concentration problems. It is agreed that he does. The issue is the extent of the concentration problems, and that is where the treating psychologist and the non-examining psychologists differ. Now, the treating psychologist did not base her conclusion about his concentration problems merely on Mr. Stacey's saying, well, I have difficulty concentrating. She could see in more than 100 visits she observed him as a trained mental health professional and had the opportunity to note exactly how he responded or didn't respond. She wrote something after the ALJ decided, are we allowed to consider that as part of a treating physician's description or not? Yes, yes. It can be considered. It was submitted to the appeals council. It is part of the administrative record, and it can be considered. Did she say anything in the course of the years of treatment that said 15 percent off task? No. She did not write that in her treatment notes. Why isn't that an issue? Because this Court has said a number of times that the absence of information should not be used as evidence of no information. That was in the Rosa decision. Because she was trying to treat his depression, concentration is, of course, a sign of depression, but she was working with him on treating his depression. That's what she was focusing on. I think the Court can recognize that if she could help him alleviate his depression, then his concentration problems would also be alleviated. She wasn't focusing primarily on dealing with concentration problems. She was focusing primarily on his greater mental health, and that was the issue of depression. The issue of Mr. Stacey's difficulty in interacting with other people that counsel mentioned, I think the focus needs to be how does he get along at work, and Mr. Stacey actually attempted to work after his career-ending accident, after his back surgery. He worked for a couple of weeks, right? One job he worked for less than a week when he was fired because he got into an argument with his supervisor, and the other job he lasted even less than that, I believe one or two days. Again, he got into an argument with somebody. He doesn't get along with coworkers. It's one of his mental health problems to say, oh, he gets along with people, is simply to ignore what's in the record. Thank you.